(82 South. 425)

LELAND v. FAULK.    (6 Div. 849.)

(Supreme Court of Alabama.    April 17, 1919.
Rehearing Denied June 19, 1919.)

1. TRUSTS ⬥⎓187—CONSTRUCTION OF DEED—
DUTY OF TRUSTEE TO PAY TAXES.

Deed of trust of two plantations of an estate for the benefit of the heirs *held* to obligate the trustee to pay taxes on another property of the estate, the homestead of the decedent, only "so long as the homestead is occupied as such;" this quoted limitation, although occurring in only one paragraph, being properly carried into the interpretation of another paragraph, directing the trustee to pay taxes.

2. TRUSTS ⬥⎓187—DEED OF TRUST—CON-
STRUCTION—DUTY TO PAY TAXES.

Deed of trust of two plantations of an estate for the benefit of the heirs *held* to obligate the trustee to pay taxes on another property of the estate, the homestead of the decedent, not merely from the rentals of the plantations, but, in view of a clause that such taxes "shall be a charge against said plantations," from money borrowed on the security of such plantations; and to authorize and require the trustee to so borrow money necessary for that purpose, if not otherwise in funds.

3. TRUSTS ⬥⎓187—DEED OF TRUST—CON-
STRUCTION—PAYMENT OF TAXES.

Deed of trust of two plantations of an estate for the benefit of the heirs *held* to obligate the trustee to pay taxes on another property of the estate, the homestead of the decedent, only during the period of the trust, in view of a clause directing the trustee, after such period, to "continue in the discharge of this trust under and in pursuance of the provisions of the agreement hereto attached," which agreement made no provision for payment of taxes by the trustee except on the plantations.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Bill by Mrs. Ella Leland Faulk against Joseph Leland to enforce a trust. Decree for complainant, and respondent appeals. Reversed and remanded.

R. M. Leland, W. A. Leland, H. H. Leland, Joseph Leland, Ella Leland Faulk, Carrie Leland, and Hume Leland, being all the heirs at law of Mrs. Ella M. Leland, deceased, entered into an agreement on the 24th day of December, 1912, relating to the division and disposition of the property of the estate of said Mrs. Ella M. Leland. On the 30th day of December, 1912, they executed a deed among themselves to effectuate the disposition of the property according to the previous agreement.

The homestead of Mrs. Ella M. Leland was conveyed by that deed to Carrie Leland and Ella M. Faulk, and by reference to the prior agreement the conveyance contained a restriction upon the sale of the homestead;

that is to say, it was provided that it should not be sold for a sum less than $30,000, unless both Carrie Leland and Ella M. Faulk agreed to a sale for a smaller amount.

The prior agreement provided for a conveyance of all the other property of the estate, consisting of two river farms, to a trustee for the benefit of Carrie Leland and Hume Leland and the other heirs. And in said deed they conveyed such other property to Joseph Leland as such trustee.

The pertinent parts of the deed of trust and the agreement are as follows:

1. From the deed of trust:

"First. Said trustee shall hold said property in trust for use and benefit of such of the heirs of the estate of the said Mrs. Ella M. Leland, deceased, for and during the period of five years from the 31st of December, 1912, as set out and contained in said agreement, and is hereby given full power and authority over said plantations for the purpose of renting out the same, collecting the rents, paying the taxes on said plantations and homestead so long as latter is occupied as such, preserving and taking care of the same for the said heirs, but it is expressly understood and agreed that said trustee shall have no power to lease said plantations or either of them, or any part thereof without written approval of Carrie Leland and subject to the conditions expressly set forth in the agreement above referred to and which is hereto attached. The net rents, incomes, and profits derived from the management of said plantations shall be preserved by said trustee, and distributed by him under, and in pursuance of the terms of said agreement hereto attached; but said trustee shall have no power to lease said place himself or have any benefit or interest in any rent contracts except such interest as he may have as a joint owner.

"Second. After the expiration of said period of five years all of the rights, powers and authorities of said trustee shall cease; provided said plantations are sold under, and according to the provisions of the agreement hereto attached. In the event said plantations should not be sold, then said trustee shall continue in the discharge of this trust under, and in pursuance of the provisions of the agreement hereto attached.

"Third. Said trustee is hereby invested with all of the powers contained in said agreement hereto attached, and is fully authorized and empowered to carry out the provisions of said contract, under and in accordance with the terms thereof as fully and completely as if the same were specifically set out in this indenture, and he is hereby fully and completely invested with power and authority to carry out and execute all the terms and conditions of said contract, as fully and completely as if the same were specifically set out in this indenture."

"Eighth. The said trustee shall pay all taxes and sidewalk, street and sewer assessments against the homestead; and shall keep the same in a reasonable state of repair under the approval and direction of Carrie Leland and Mrs. Faulk; and shall also keep said homestead insured; and all such assessments, charges and

expenses shall be a charge againt said plantations; until the sale of said farms."

2. From the prior agreement:

"5. Said heirs further agree that they will and shall execute a conveyance conveying all other property to a trustee for the benefit of Carrie Leland and Hume Leland and the other heirs of said estate, as follows: Said trustee shall have full power and control over all of said other property consisting of two farms, the Potter place and Leland place, to rent out the same and collect rents, pay taxes and care for the property and preserve said rents, incomes and profits for the following purposes:

"(a) Said trustee shall pay to Carrie Leland $75.00 per month for five years; (b) and shall also pay Hume Leland $10.00 per week for five years; (c) and shall pay any indebtedness due from said estate and the taxes and other expenses incident to said trust; and (d) to preserve what surplus there may be for the benefit of the beneficiaries herein set out."

"16. In the event the rents should fall below a sum sufficient to pay Hume Leland and Carrie Leland the amounts provided for them and the expenses, taxes, etc., then said sums shall be paid out of any surplus accumulated; or said trustee shall be authorized to borrow money sufficient to pay $75.00 to Carrie Leland monthly and Hume Leland weekly $10.00 as herein provided."

Mrs. Ella Leland Faulk in April, 1918, filed this bill, alleging that Joseph Leland, the trustee, had failed to pay taxes on the homestead, and had failed to carry out the other trusts imposed on him with reference to the same, and prayed for a construction of the agreement, and that defendant be ordered to pay all taxes, sidewalk, street, and sewer assessments against the homestead, and to keep the homestead in a reasonable state of repair under the direction of Carrie Leland and Ella Leland Faulk.

The defendant answered, setting up that under the terms of the deed of trust and the prior agreement he, as such trustee, was authorized and empowered to pay the taxes and other charges against the homestead out of the rents received from the farms only so long as the homestead was occupied by Carrie Leland and Ella Leland Faulk as a homestead; that in October, 1916, said Carrie Leland and complainant abandoned said homestead, as a homestead, and leased the same for office purposes for a period of three years from the date of the agreement, and that defendant by reason thereof was no longer under duty to pay the taxes, assessments, etc., against the homestead out of the rents of the farms; that in the year 1916 all the crops on said farms were destroyed by a flood, and defendant was unable to collect any rents that year; that for this reason it became necessary for defendant to exercise his power to borrow money for the support of Carrie Leland and Hume Leland, and that the debts so incurred, together with the charges

against the farms, absorbed all the rents collected for the year 1917, and defendant has not, and has not had, any moneys arising from the rent of said farms, available for the purpose of discharging the taxes, charges, and assessments against the homestead.

Defendant also alleged that he is now renting out said farms, and it might be that he would have proceeds therefrom over and above the sums necessary to be devoted under the terms of the trust to the support of Carrie Leland and Hume Leland, and that it is important and necessary that the defendant be informed and instructed by the court as to the construction of said deed of trust and contract and his powers and authority thereunder.

Both the bill and the answer called for a construction of the agreements' and a statement of the defendant's powers and duties thereunder, and in fact such construction is essential to define and conserve the rights of all parties to the agreement.

The case was submitted on the pleadings and exhibits, and the court decreed, among other things:

"That the complainant is entitled to the relief prayed for, and it is the order, judgment, and decree of the court that the said Joseph Leland, the trustee named in said contracts, be and he is hereby ordered and directed to pay all state, county, and city taxes levied against the property on Greensboro avenue, known as the old Leland homestead, and to pay all sidewalk, street, and sewer assessments against said property, and he is ordered and directed to keep the same in a reasonable state of repair, under the approval and direction of Miss Carrie Leland and Mrs. Ella Leland Faulk, and he is ordered to keep said property insured for a reasonable amount in some reliable insurance company."

This appeal is from that decree.

Foster, Verner & Rice, of Tuscaloosa, for appellant.

E. L. Clarkson and Edward De Graffenried, both of Tuscaloosa, for appellee.

SOMERVILLE, J. The object of this proceeding is to secure a judicial construction of the terms of a deed of trust executed by the complainant and others to the respondent.

The first paragraph of the deed of trust sets out the duties and powers of the trustee with respect to the management of the two plantations, the title to which has been invested in him as trustee, and the disposition of the rents and income derived therefrom, including the provision for renting out and collecting the rents, and "paying the taxes on said plantations and *homestead, so long as the latter is occupied as such.*" (Italics supplied.)

The eighth paragraph provides that the

trustee "shall pay all taxes, and sidewalk, street and sewer assessments against the homestead; and shall keep the same in a reasonable state of repair; * * * and shall also keep said homestead insured; and all such assessments, charges and expenses shall be a charge against said plantations, until the sale of said farms."

The specific points in controversy are: (1) Whether the trustee's mandate to pay taxes and municipal assessments was operative after October, 1916, when the homestead property was rented for business uses, and ceased to be the residence of its owners; (2) whether, in any event, the trustee is authorized or required to pay such taxes and assessments, and to keep up reasonable repairs and insurance on said homestead by borrowing the necessary funds in case the rents derived from the plantations are, at the time needed, insufficient for those purposes; and (3) whether, upon the expiration of his powers and duties under the deed of trust, on, to wit, December 30, 1917, the farms remaining unsold, the trustee was thereafter authorized or required to make any of the said expenditures specified in the deed of trust in favor of said homestead, by virtue of any provision therefor to be found in the first trust agreement.

[1] 1. It is clear enough that the eighth paragraph of the deed of trust, considered apart from the first paragraph, would impose upon the trustee the duty of paying all taxes accruing on the homestead during the specified term of his trusteeship under this deed, viz. from December 24, 1912, to December 24, 1917.

But it is equally clear that, unless the limitation upon such payments, as stipulated in the first paragraph, is read into the eighth paragraph also, it must be summarily discarded. Obviously the two paragraphs must be construed in pari materia, and effect must be given to every provision of each, if this can be done consistently with their harmonious operation, and with the intention of the parties as ascertained from the entire instrument.

The question is by no means free from doubt, but we think that the obligations imposed upon the trustee by the terms of the eighth paragraph—more clearly the obligation to pay the taxes on the homestead—are subject to the limitation prescribed in the first paragraph, viz. "so long as the homestead is occupied as such."

Taking the instrument as a whole, we are led to the conviction that, although the word "homestead" may have been used in part as a descriptive term for the old family home, as distinguished from the farm properties,

203 ALA.—12

it nevertheless embodied also the idea of its continued occupation by the two beneficiaries who then owned it and occupied it, or contemplated so doing.

If the limitation in question is not a qualification also of the obligations imposed upon the trustee by the eighth paragraph, and if that paragraph is to be literally and independently construed, it would seem that the benefits thereby provided for the *homestead* would follow the property, in the contingency of its alienation during the period of trust, into the hands of strangers, and thus inure to their benefit—a conclusion which of course cannot be entertained.

We think, therefore, that the trustee's obligation to pay the taxes on the *homestead* ceased upon the termination of its occupancy as such in October, 1916.

[2] 2. While the first paragraph of the deed of trust seems to contemplate, by implication, that taxes due on the homestead are to be paid out of farm rents collected by the trustee, the eighth paragraph is explicit that such taxes *shall be paid* by him, and that, when paid, they "shall be a charge against *said plantations*," and not merely against their rentals.

We think this duty is made mandatory upon the trustee, and that he would be authorized and required to borrow the money necessary for that purpose, if not otherwise in funds.

[3] 3. It seems entirely clear that, upon the termination of the five-year period of trusteeship under this deed of trust and the reversion of the trustee's powers and duties to the terms and limitations of the prior and original trust agreement, he is under no duty, and is without authority, to pay the taxes, or do the other things required by the later deed of trust, for the benefit of the homestead. This results from the provision of the second paragraph of the deed of trust that, "in the event said plantations should not be sold (at the expiration of the five years trust), then said trustee shall continue in the discharge of this trust under, and in pursuance of the provisions of the agreement hereto attached," since in the agreement referred there is no provision for the payment of any taxes by the trustee except those due upon the farms.

The decree of the circuit court will be reversed, and the cause will be remanded for further hearing in accordance with the foregoing opinion.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.